CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 FEB 26  PM 3: 56

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARK EDWARD BOLLES, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:12-CV-19 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION TO DENY PETITION FOR
A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Petitioner MARK EDWARD BOLLES filed a Petition for a Writ of Habeas Corpus by a

Person in State Custody challenging his convictions out of the 251st Judicial District Court of

Randall County, Texas, for two counts of possession of child pornography in Cause No. 19606-

C. For the reasons set out hereafter, the United States Magistrate Judge is of the opinion

petitioner's application for federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

In January 2008, petitioner was indicted in Randall County, Texas, for three counts of

possession of child pornography. Clerk's Record p. 4. The State waived one count of the

indictment (Count Two), and Count Three was renumbered as Count Two. Reporter's Record

Vol 2, pp. 48-49; Clerk's Record p. 4. Petitioner pleaded not guilty, and the case was tried to a

jury. The jury found petitioner guilty. Sentencing was by the judge. The trial court found

petitioner's punishment range was enhanced with one prior felony conviction and assessed a six-year sentence on each count, such sentences to run concurrently. Clerk's Record p. 107. The judgment was affirmed on appeal. *Bolles v. State*, No. 07-08-0304-CR, 2010 WL 539684 (Tex. App. – Amarillo Feb. 16, 2010, *pet. ref'd*). The Amarillo Court of Appeals summarized the facts of the case as follows:

> In November 2007, appellant was working for Joe Virden at Virden Perma–Built in Amarillo, Texas. Appellant had been living at a shelter located in Amarillo. Joe Virden offered to allow appellant to live in the attic of one of the buildings on the business site. Additionally, Virden gave appellant access to a bathroom and a television within the offices of Virden Perma–Built. The computer for the operation of the business was located in the same office area as the television. On Sunday, January 6, 2008, Virden came to the office to work on a special order. When Virden booted up the computer, numerous hard core pornographic images appeared. Virden immediately suspected appellant of misusing the office computer and went to the attic area where appellant slept. Virden fired appellant on the spot and ordered him off the premises. To assist appellant, Virden provided a number of commercial size trash bags for appellant's personal belongings. Appellant's only means of transportation was a bicycle and he could not carry all of the trash bags at one time.

> The next day, when Virden came to the office, he found appellant sleeping in the attic. Again, appellant was ordered off of the property. Later the same day, Virden's daughter, Terri Harris, was checking the inventory of PVC pipe in a shed located on the property. While checking the inventory in the shed, Harris saw a number of items that did not appear to belong. Harris notified Virden, who came to the shed to investigate. One item found in the shed was a white plastic trash bag. In an attempt to identify what was in the bag and who it belonged to, Virden looked through the material and discovered pornographic material. Virden then notified the Amarillo Police, who dispatched officers. The initial officer, Supina, viewed the material and requested a detective specializing in crimes against children be dispatched. Cpl. Brian Wallace then went to the Perma–Built site and looked through the material. Wallace testified that he found photographs that he recognized as child pornography. After viewing a few of the items, Wallace asked for permission to search the shed for additional evidence. During this search, Wallace found the two pictures that were the basis of appellant's indictments. In addition to the pictures, a number of documents belonging to and in the name of appellant were found. Additionally, there were computer generated pictures of young girls engaged in various sexual acts, magazine advertisements of children with the heads and faces cut out, adult pornography, and a spiral

notebook with handwritten sexually explicit stories about young females.

The next day, January 8, 2008, police were called to an abandoned apartment complex, Jackson Square Apartments. An alarm had gone off and the manager of the property reported that appellant, who had been a tenant, was trespassing. Officers found appellant in one of the abandoned apartments. Appellant was arrested for trespassing and taken to jail. On the way to jail, appellant engaged the transporting officer in a conversation. At this time, without apparent questioning by the officer, appellant explained that he was trespassing because he had been kicked out at Virden Perma–Built. He told the officer he had left some items of personal property in a white trash bag on the Perma–Built property and hoped to be allowed to retrieve the property. Appellant also advised the officer that he was addicted to pornography and liked the subjects younger and younger. A search of the apartment where appellant was located revealed more of the same type of material found in the pipe shed at Virden Perma–Built. Additionally, the police were able to lift two fingerprints from inside the apartment that were identified as appellant's.

*Id.* at **1-2. Petitioner asserts the appeals court's holding that he was arrested at the Jackson Square Apartments is incorrect. Petitioner says he was arrested at the Midtowner Apartments instead of the Jackson Square Apartments. Petitioner bases claims of prosecutorial misconduct and ineffective assistance of trial counsel and appellate counsel on the alleged misidentification of the location of his arrest. These claims are addressed in Section IV.

After the intermediate appellate court affirmed the judgment, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on September 15, 2010. *Bolles v. State*, PDR No. 494-10 (Tex. Crim. App. Sept. 15, 2010). Petitioner filed a state habeas corpus application on August 22, 2011, but the application was signed on May 7, 2011. It is not clear why the writ application was filed in state court months after it was signed. However, the federal writ petition is timely, even if August 22, 2011, is used as the filing date of the state writ application for purposes of statutory tolling. The state habeas corpus application was denied on October 26, 2011. *Ex parte Bolles*, No. WR-76,555-01 (Tex. Crim. App. Oct. 26, 2011).

Petitioner then filed this federal Petition for a Writ of Habeas Corpus with a supplemental memorandum on January 20, 2012. Petitioner stated he placed these documents in the prison mail system on January 18, 2012. Document 1. Also before the Court is respondent's answer. Document 15.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to contend respondent is holding him in violation of the Constitution and laws of the United States for the following reasons:

1.  Petitioner received ineffective assistance of appellate counsel, because counsel wrongly identified the location of petitioner's arrest;

2.  Petitioner received ineffective assistance of trial counsel, because counsel:

    (1)  incorrectly identified the location of petitioner's arrest and agreed that petitioner was a trespasser at the Jackson Square Apartments;

    (2)  failed to object to the admission of extraneous evidence as prejudicial;

    (3)  failed to effectively cross-examine Sgt. Brian Wallace;

    (4)  failed to obtain an expert witness to counter Sgt. Wallace's testimony; and

    (5)  failed to investigate and develop exculpatory evidence regarding a website; and

3.  There was insufficient evidence to establish that children were depicted in the two images which were the basis of the indictment.

4.  Prosecutorial misconduct, because the prosecutor:

    (1)  falsely identified the location of petitioner's arrest; and

    (2)  falsely stated that real people are needed to create a realistic composite;

    (3)  solicited statements from Sgt. Wallace beyond his training;

    (4)  misquoted Sgt. Wallace as saying no currently available technology could

produce synthetic images;

(5)     inflamed the jurors with irrelevant comments;

(6)     issued an emotional plea that jurors had a chance to send a message by
        convicting petitioner.

III.
STANDARDS OF REVIEW

*A.  Standard under 28 U.S.C. § 2254(d)*

Under the Antiterrorism and Effective Death Penalty Act, a petitioner may not obtain

habeas corpus relief in federal court with respect to any claim adjudicated on the merits in the

state court proceedings unless the adjudication of the claim resulted in a decision contrary to or

involved an unreasonable application of clearly established federal constitutional law or resulted

in a decision based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. 28 U.S.C. § 2254(d).

The Texas Court of Criminal Appeals heard and adjudicated on the merits the claims

petitioner presents in his federal habeas corpus petition when it denied petitioner's applications

for state habeas relief without a written order. *Ex parte Bolles*, No. WR-76,555-01; *see*

*Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011); *Ex parte Torres*, 943 S.W.2d

469, 472 (Tex. Crim. App. 1997). Petitioner's burden before this Court is significantly

heightened in that petitioner cannot prevail even if he shows the state court's determination was

incorrect. Petitioner must also show the state court unreasonably applied federal law or made an

unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002).

Petitioner has failed to meet this burden. A review of petitioner's claims confirms this

petition should be denied.

### B. Standard for ineffective assistance of counsel

The proper standard for reviewing a claim of ineffective assistance of trial counsel is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687. An attorney's performance was deficient if the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689. Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

Additionally, petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Specifically, to prove prejudice, petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162

F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697.

When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* ___ U.S. ___, 134 S.Ct. 10, 13, 187 L. Ed. 2d 348 (2013). Petitioner's ineffective assistance of counsel claims were adjudicated on the merits in a state court proceeding, and the denial of relief was based on a factual determination that will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). A state-court factual determination is not unreasonable merely because the federal court would have reached a different conclusion in the first instance. *Burt*, 134 S. Ct. at 15. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. Petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Canales v. Stephens*, 765 F.3d 551, 563 (5th Cir. 2014). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as in this case, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte*

*Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence).

To make a claim of ineffective appellate counsel, a petitioner must also meet the two-prong test of *Strickland v. Washington*, 466 U.S. at 689; *Smith v. Robbins,* 528 U.S. 259, 285 (2000).  To establish deficient performance, a petitioner must show that counsel on appeal unreasonably failed to discover and raise nonfrivolous issues.  *Id.*  To establish prejudice, the petitioner "must show a reasonable probability that, [but for counsel's error], he would have prevailed on appeal."  *Id.* at 285-86 (citing *Strickland,* 466 U.S. at 694).  To do this, he must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present."  *Id.* at 288.  The federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes appellate counsel's performance fell within the bounds of reasonableness.  *Burt v. Titlow*, 134 S.Ct. at 13.

IV.
### MERITS OF PETITIONER'S ALLEGATIONS

Petitioner's raises claims concerning errors in stating the location of his arrest.  He also raises claims regarding evidence about the ages of the persons in the two photos for which he was prosecuted and evidence about whether those two images were computer generated. Additionally, petitioner contends trial counsel failed to object to the admission of extraneous evidence as prejudicial; the prosecutor inflamed the jurors with irrelevant comments; and the prosecutor issued an emotional plea that the jurors had a chance to send a message by convicting petitioner.

### A. Location of arrest

In ground 1, petitioner contends he received ineffective assistance of appellate counsel when counsel presented incorrect information to the appeal court, wrongly placing petitioner at Jackson Square and in close proximity to evidence retrieved from there. In ground 2(1), petitioner asserts he received ineffective assistance of trial counsel, because counsel incorrectly identified the Jackson Square Apartments as the location of petitioner's arrest and counsel agreed that petitioner was a trespasser at the Jackson Square Apartments. In ground 4(1), petitioner raises a claim of prosecutorial misconduct, alleging the prosecutor falsely identified the location of petitioner's arrest.

Petitioner contends throughout his petition that there was confusion about whether he was arrested at the Midtowner Apartments or the Jackson Square Apartments. Petitioner asserts the trial court admitted the evidence found at the Jackson Square Apartments under the mistaken belief that petitioner was arrested there. He contends this error was repeated on appeal, and the appellate court overruled petitioner's point of error regarding the admission of the evidence, operating under the mistaken belief that petitioner was arrested at Jackson Square. Petitioner also claims the state incorrectly argued the Jackson Square evidence was admissible as same transaction contextual evidence.

Lorien Perez was the manager of the Midtowner Apartments and the Jackson Square Apartments. Reporter's Record, Vol. 3, p. 81. The Jackson Square apartment complex is at 1601 South Jackson. *Id.* at 86. The parties refer to the other apartment complex, which is at 1604 South Tyler (*id.* at 130-31), as the Midtowner Apartments.

On January 8, 2008, police officers responded to a motion sensor alarm that was triggered

at 1604 South Tyler – the Midtowner Apartments. *Id.* at 130. Petitioner was arrested there for

trespassing. *Id.* at 131. After being arrested, petitioner told an officer that he was addicted to

pornography and he liked the subjects younger and younger. *Id.* at 132.

Manager Perez called the police on January 11, 2008, because petitioner had been

sneaking into an apartment at the Jackson Square complex, which had been closed down. *Id.* at

83. Petitioner used to live at the Jackson Square Apartments, before it had been closed down.

*Id.* at 81-83. Police officers went to the Jackson Square Apartments on January 11, 2008, to

investigate material Ms. Perez found in an apartment. *Id.* at 86, 100. In the apartment at Jackson

Square in which petitioner had been, police officers on January 11, 2008, discovered

pornographic material. *Id.* at 101. Petitioner's fingerprints were inside the apartment at Jackson

Square where the pornographic material was found. *Id.* at 106-07.

Petitioner claims the prosecutor misidentified the location of the arrest several times

during the trial. Petitioner asserts one misidentification occurred in opening statements.

However, in the opening statement, a prosecutor stated that the Midtowner Apartments and

Jackson Square were searched, but material was found at Jackson Square. Reporter's Record,

Vol. 3, p. 12. The prosecutor did not state that petitioner was arrested at Jackson Square.

Petitioner points to Vol 3. p. 81, but that is where Ms. Perez testified that she managed both the

Midtowner Apartments and Jackson Square Apartments. Petitioner points to testimony of

Sergeant Wallace at Vol. 3, p. 114. However, Sergeant Wallace testified that a girl, who was

identified as a girl appearing in some of petitioner's sexual writings, used to live on South Tyler

near where petitioner was arrested and close to Jackson Square. *Id.* at 114. Sergeant Wallace

correctly identified South Tyler as the location where petitioner was arrested.

Nevertheless, there still appears to have been some confusion at trial and misstatements about the Midtowner Apartments on South Tyler and the Jackson Square Apartments. The prosecutor asked the manager of the Midtowner Apartments and the Jackson Square Apartments whether the police went to Jackson Square on January 8 and January 11, and whether she gave the police permission to search Jackson Square on those dates. *Id.* at 83-84. The manager answered both questions affirmatively. *Id.* Petitioner, however, was arrested on January 8 at the apartments at 1604 South Tyler, which petitioner states are the Midtowner Apartments, and not the Jackson Square Apartments at 1601 South Jackson. Additionally, the prosecutor asked Officer Beckhum about being dispatched to 1604 South Tyler and arresting petitioner there. *Id.* at 130-31. However, the prosecutor then asked Officer Beckhum if he questioned petitioner while petitioner was transported from 1604 South Jackson. *Id.*

Although the record reflects there was some confusion and misstatements about the Midtowner Apartments and Jackson Square Apartments, any confusion was not prejudicial. Petitioner contends the material seized from the Jackson Square Apartments was admissible because the trial court and appellate court mistakenly believed petitioner was arrested at the Jackson Square Apartments. That was not the basis of the admission of the Jackson Square evidence.

The two images of child pornography, State's Exhibits 9 and 10, were found at Virden Perma-Built. *Id.* at 38-39. There was no evidence recovered from the Midtowner Apartments on South Tyler where petitioner was arrested on January 8, 2008. The evidence regarding petitioner's arrest was that petitioner told an officer he had left items in a white trash bag on the Perma-Built property and that petitioner stated he was addicted to pornography and liked the

subjects younger and younger.  On January 11, 2011, a search of an apartment at the closed

Jackson Square Apartments at 1601 South Jackson revealed numerous items of evidence that

were introduced at trial.  The material found in the search of the Jackson Square apartment on

January 11, 2008, was admissible because it was evidence of petitioner's intent and knowledge

regarding the material found at Virden Perma-Built.  The Jackson Square evidence was not

admitted on some mistaken belief that petitioner was arrested there, and petitioner was not

prejudiced or harmed by any misstatement about the location of his arrest.  Petitioner's claims

about the location of his arrest are as follows:

### 1. Ineffective assistance of appellate counsel - location of arrest

Petitioner contends he received ineffective assistance of appellate counsel when counsel

incorrectly informed the appellate court that petitioner was arrested at the Jackson Square

Apartments in close proximity to evidence found there (ground 1).  However, appellate counsel

did not state that petitioner was arrested at Jackson Square.  The appellate brief for petitioner

correctly stated that the police were called to the Jackson Square Apartments on January 11,

2008, for a reported trespass.  Brief for the Appellant at p. 4.  The apartment manager took the

police to an apartment in which there were pornographic materials.  *Id.*  Petitioner's fingerprints

were in the apartment.  *Id.*  These recitations in the appellate brief were correct.  Petitioner was

linked to the material found in the apartment at Jackson Square because his fingerprints were

found there.

The state's brief stated that petitioner was arrested at the Jackson Square Apartments on

January 8, where he was trespassing.  State's Brief at pp. 5-6.  That was incorrect, because

petitioner was arrested at the Midtowner Apartments.  The state argued that the evidence from

the Jackson Square Apartments was admissible to show petitioner's knowledge and intent

regarding the possession of the two images of child pornography for which he was prosecuted

and to rebut the defense that he would not have known they were images of children. States'

Brief at p. 32. Petitioner contends the state argued that the evidence found at Jackson Square was

admissible as same transaction contextual evidence. Petitioner is incorrect. The state did raise

an argument that the material found at Virden Perma-Built, along with the two photographs for

which petitioner was prosecuted, was same transaction contextual evidence, because it was

possessed at Virden Perma-Built along with the two photographs. State's Brief at pp. 24-26.

But, the state did not argue that the evidence found at Jackson Square was admissible as same

transaction contextual evidence under the theory that petitioner was arrested at Jackson Square.

Contrary to petitioner's assertion, the appellate court did not hold the Jackson Square

evidence was admissible because that was where petitioner was arrested. Although the appellate

court incorrectly stated that petitioner was arrested at Jackson Square, instead of the Midtowner

Apartments, that was not the basis of its holding regarding the admissibility of the Jackson

Square evidence. The appellate court held that the extraneous material found at Virden Perma-

Built and at Jackson Square was admissible because most of it involved pictures of young

children or stories about young children. *Bolles v. State*, 2010 WL 539684 at *4. That evidence

rebutted the defensive theory and supported the state's theory that petitioner knew what he had in

his possession and that he possessed the offending pictures intentionally and knowingly. *Id.*

Petitioner has not shown appellate counsel rendered deficient performance, because

appellate counsel provided correct information. Because appellate counsel did not err, and

because the appellate court did not base its decision on the admissibility of the Jackson Square

evidence on a mistaken belief that petitioner was arrested there, petitioner has not shown he was prejudiced by appellate counsel's actions. Petitioner has not shown that the state court's rejection of this claim (ground 1) was unreasonable.

### 2. *Prosecutorial misconduct - location of arrest*

Petitioner contends the prosecutor falsely identified the location of petitioner's arrest (ground 4(1)). Petitioner appears to raise a claim that the prosecutor knowingly used perjured testimony or knowingly failed to correct false testimony under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed. 2d 104 (1972), and *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). To prevail, petitioner must show the testimony was false, the prosecutor knew it was false, and the testimony was material. *Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir. 2014). Testimony is material if there is any reasonable likelihood that the false testimony could have affected the jury's judgment. *Id.*

As previously explained in this recommendation, most of the citations to the record by petitioner do not show misstatements about the location of petitioner's arrest. Additionally, the misstatements that did occur were not material. Contrary to petitioner's complaints, the location of his arrest had nothing to do with the admission of the evidence seized at Jackson Square. That evidence was not admitted because the court mistakenly thought that was where petitioner was arrested. It was admitted because it was connected to petitioner by his fingerprints and it tended to show his knowledge and intent in possessing the two images of child pornography for which he was prosecuted. Petitioner has not shown that the state court's rejection of this claim (ground 4(1)) was unreasonable.

### 3. *Ineffective assistance of trial counsel - location of arrest*

Petitioner asserts counsel mistakenly named Jackson Square as the arrest location and counsel incorrectly agreed that petitioner was a trespasser there (ground 2(1)). Petitioner asserts those mistakes allowed for the admission of the Jackson Square materials as same transaction contextual evidence.

Petitioner's citation to the record, Reporter's Record, Vol. 3, p. 27, does not show trial counsel stated petitioner was arrested at Jackson Square. However, respondent points out that counsel did state at another point during argument on the motion to suppress that the defense had no issue with whether he had permission to be at Jackson Square where he was arrested. *Id.* at 47. But, that statement had nothing to do with the admissibility of evidence. Counsel was explaining that the motion to suppress only concerned the evidence found at Virden Perma-Built.

During discussion about the jury charge, and after all the testimony and evidence had been presented, defense counsel addressed the need for a jury charge on the search and seizure issue raised in the motion to suppress. Docket No. 15-1 (Respondent's Answer, Exhibit A – Reporter's Record Vol. 3, p. 138). The trial judge said there was no issue about the Jackson Street search, because petitioner was a trespasser and had no standing. *Id.* Defense counsel agreed. *Id.* Again, that position was consistent with the defense position that the search that was the subject of the motion to suppress, and for which defense counsel sought a jury instruction, was the search at Virden Perma-Built. Counsel's agreement that petitioner lacked standing to complain about the Jackson Square search was correct, and it had no bearing on the issue of whether the extraneous evidence found at Virden Perma-Built and at Jackson Square was admissible, aside from the search issue raised regarding Virden Perma-Built. Also, counsel's

statement was not in the presence of the jury, so the jury did not hear counsel agree that petitioner was a trespasser at the Jackson Square Apartments.

Moreover, as previously explained in this recommendation, the state appellate court held the evidence found at the Jackson Square Apartments was admissible because it supported the state's theory that petitioner knew the nature of what he had in his possession and that he possessed the contraband pictures intentionally and knowingly. The appellate court did not hold that the evidence was admissible because of any mistaken belief by the appellate court that it was found at the location of petitioner's arrest. The fact that petitioner was arrested at another apartment complex had nothing to do with the admissibility of the evidence found at Jackson Square.

Petitioner has not shown deficient performance. Counsel's statements regarding the location of petitioner's arrest did not affect the admissibility of the evidence found at the Jackson Square Apartments. Counsel's statement that petitioner was a trespasser at the Jackson Square Apartments was not made at trial before the jury, so it did not have any effect on the trial. Petitioner has not shown that the state court's rejection of this claim (ground 2(1)) was unreasonable.

*B. Evidence about the ages of the persons in the two images of child pornography and about whether the two images of child pornography were computer generated*

*1. Ineffective assistance of trial counsel for failure to effectively cross-examine Sgt. Brian Wallace*

In ground 2(3), petitioner asserts trial counsel failed to effectively cross-examine Sgt. Brian Wallace, a police detective, who testified the two pornographic photos which were the basis of the prosecution were of actual prepubescent children under the age of eighteen years old.

*Id.* at 123. Petitioner contends Sgt. Wallace was not qualified as a photographic or computer-image analyst or as an expert in physiology or anatomy. Petitioner alleges trial counsel should have cross-examined Sgt. Wallace about the basis for his opinions and counsel should have asked that his testimony be stricken.

Counsel asked Sgt. Wallace about his training in computer imaging and photo reproduction, which was none. Reporter's Record Vol. 3, pp. 119-20. However, Sgt. Wallace was able to identify the difference between actual pornographic images and virtual images. *Id.* at 118-23. Counsel cross-examined Sgt. Wallace about the age of the people in the two images. *Id.* at 123-26, 127-30. In response to cross-examination, Sgt. Wallace testified that he believed, and his opinion was, that the images were of children under eighteen years old. *Id.* at 125, 129.

Similarly, Corporal Leslie Supina, a police officer, testified that State's Exhibit 9 showed what looked to be a young girl, maybe nine or ten years old, performing oral sex. *Id.* at 39. Counsel objected that Cpl. Supina was not qualified as an expert on the age of the person in the image, but the trial court overruled the objection. *Id.* Corporal Supina testified that State's Exhibit 10 showed what looked to be a young child, also nine or ten years old, being penetrated. *Id.* Counsel's objection was again overruled. *Id.* Corporal Supina compared State's Exhibit 3 to State's Exhibits 9 and 10, and she testified that there was a distinct difference, that Exhibit 3 appeared to be computer-generated, and that Exhibits 9 and 10 appeared to be real people. *Id.* at 58. Counsel cross-examined Cpl. Supina about her training regarding computer-generated imagery in the area of child pornography, and she said she had none. *Id.* at 60. She testified her opinions were based on her experience. *Id.*

Defense counsel argued to the jury that Cpl. Supina and Sgt. Wallace did not have

training or experience in computers or photographic reproduction of computer images. *Id.* at

147. He argued the state did not prove that the two images were of real people. *Id.* at 147-49.

He also argued the state did not prove they were images of people under eighteen years old. *Id.*

Texas law provides that for purposes of the child pornography statute, TEX. PENAL CODE

§ 43.26, the determination of whether someone was younger than eighteen years old may be done

by personal inspection of the child; inspection of the photograph or motion picture that shows the

child engaging in the sexual performance; oral testimony by a witness to the sexual performance

as to the age of the child based on the child's appearance at the time; expert medical testimony

based on the appearance of the child engaging in the sexual performance; or any other method

authorized by law of by the rules of evidence at common law. TEX. PENAL CODE § 43.25(g).

There is no requirement that the state present expert testimony to determine a child's age in a

possession of child pornography case. *Wilson v. State*, 419 S.W.3d 582, 592 (Tex. App. — San

Antonio 2013, *no pet.*). "[O]bservations which do not require significant expertise to interpret

and which are not based on a scientific theory can be admitted as lay opinions." *Osbourn v.*

*State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002).

Sergeant Wallace was not presented as an expert witness, and he was permitted to give

his opinion as a lay witness regarding the age of the children depicted in the two images. *See*

*Whiddon v. State*, No. 08-11-00188-CR, 2013 WL 772830 at *4 (Tex. App. — El Paso 2013, *pet.*

*ref'd*). There was no basis for an objection that Sgt. Wallace was not qualified as an expert to

testify about his opinions of the ages of the children in the two images. Had counsel objected to

Sgt. Wallace's testimony on that basis, his objection would have been overruled, as was

counsel's objection to Cpl. Supina's similar testimony.

Petitioner has not shown deficient performance or prejudice.  He has not shown that the state court's rejection of this sub-claim (ground 2(3)) was unreasonable.

### 2. Ineffective assistance of trial counsel for failure to obtain an expert witness to counter Sgt. Wallace's testimony

In ground 2(4), petitioner asserts defense counsel failed to obtain an expert witness to counter Sgt. Wallace's testimony.  To show ineffective assistance of counsel for failure to present a witness, petitioner must identify the witness, demonstrate the witness was available to testify, and set out the content of the witness's proposed testimony.  *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001).  Petitioner has not identified a witness, expert or otherwise, whom counsel should have called.  Petitioner has not set out what any such witness's testimony would have been.  Ultimately, it was the jury who had to examine the two images to determine for themselves whether the state proved beyond a reasonable doubt that the images were of real children who were under eighteen years of age and not computer-generated images.  Petitioner has not shown deficient performance or prejudice.  He has not shown that the state court's rejection of this sub-claim (ground 2(4)) was unreasonable.

### 3. Ineffective assistance of trial counsel for failure to investigate and develop exculpatory evidence regarding a website

In ground 2(5), petitioner contends defense counsel failed to substantiate the existence of a website to show that State's Exhibit 9 was obtained from that website.  Defense counsel asked Cpl. Supina and Sgt. Wallace whether State's Exhibit 9 had a website name that included "18yearsold" on the image.  Corporal Supina could not tell whether the second character was an eight or a zero, so she could not tell whether it stated "18yearsold" or "10yearsold."  Reporter's Record Vol. 3, p. 55.  Defense counsel made the point that Cpl. Supina could not tell whether it

said "18yearsold" or "10yearsold." *Id.* Corporal Supina testified that the child in Exhibit 9 appeared to be closer to ten years old than to eighteen years old. *Id.* at 59. Sergeant Wallace testified that the website on the image appeared to include "10yearsold," but it could have possibly stated "18yearsold." *Id.* at 124. He testified that the child was not eighteen years old. *Id.*

Petitioner has not shown what counsel would have discovered had counsel investigated the matter. Petitioner has not shown that the image was taken from a website named "18yearsold." Also, defense counsel made the point that it was not clear whether the image said "18yearsold" or "10yearsold." Moreover, even if the image was from a website named in part "18yearsold," that would not establish that the image was of someone eighteen years old or older. The jury had to view Exhibit 9 themselves to determine whether, beyond a reasonable doubt, the image was of a child under eighteen years old. At best, evidence that the image was from a website titled "18yearsold" may have been evidence that petitioner thought the image was of someone who was eighteen years old. However, based on the image in Exhibit 9, the testimony that the image was of a girl who was nine or ten years old, petitioner's admission that he was addicted to pornography and that he liked the subjects younger and younger, and the other evidence introduced at trial, petitioner has not shown there is a reasonable probability that the jury would not have found he knew the image was of a child and that the outcome of the trial would have been different even if there were evidence that the image was from a website named "18yearsold." Petitioner has not shown deficient performance or prejudice. He has not shown that the state court's rejection of this sub-claim (ground 2(5)) was unreasonable.

### 4.  Prosecutorial misconduct -

*Solicited statements from Sgt. Wallace beyond his training;*
*Misquoted Sgt. Wallace as saying no currently available technology*
*could produce synthetic images; and*
*False statement that real people are needed to create a realistic composite;*

In ground 4(3), petitioner contends the prosecutor solicited statements from Sgt. Wallace beyond his training regarding real and virtual images.  In ground 4(4), petitioner asserts the prosecutor misquoted Sgt. Wallace as saying no currently available technology could produce synthetic images.  In ground 4(2), petitioner maintains that the prosecutor's statement that real people were needed to create a realistic composite was a falsehood that was not supported by the evidence.

Sergeant Wallace testified that virtual pornography produces images that look like cartoons, which Sgt. Wallace also referred to as "anime," and that a person can tell by looking at it that it is virtual.  *Id.* at 118.  He testified that morphed pornography takes actual pictures and uses computer programs, such as Photoshop, to move the image around.  *Id.* at 121.  He did not have training on how to use a computer to accomplish virtual or morphed imagery, but he based his testimony on his training in identifying virtual, morphed, and real imagery.  *Id.* at 120 & 121.

Sergeant Wallace also testified as follows:

Q:     Based on your training and experience and your education in this specific area, are you aware of any program that could produce a photograph like the ones in State's Exhibit 9 and State's Exhibit 10 that were not actual children?

A:     No, ma'am.

*Id.* at 122-23.

After testimony about computer-generated images, defense counsel cross-examined Cpl. Supina as follows:

Q:     [In the movie *Forrest Gump*,] [d]o you recall the instance where For[r]est Gump or Tom Hanks appeared to be meeting President Kennedy?

A:     Yes.

Q:     Okay.  In your opinion, if you view that image, would you think . . . that Mr. Hanks was in that photograph meeting President Kennedy? . . . I mean, it appeared real, didn't it?

A:     It did appear real, yes.

Q:     But you know that it wasn't real?

A:     Right, based on my experience, yes, I would know it wasn't real.

*Id.* at 61.

On redirect examination, Cpl. Supina testified that Tom Hanks was a real person, the character he played in the movie was a real person in the movie, President Kennedy was a real person, they had photo-shopped Tom Hanks into the photograph with President Kennedy, and they were both real people.  *Id.* at 62.

In closing argument, the prosecutor argued that Exhibits 9 and 10 were of real children. The prosecutor asked the jury to look at Exhibit 3, which was virtual child pornography. Document 15-1 (Respondent's Answer, Exhibit A - Reporter's Record, Vol. 3, p. 142).  The prosecutor asked the jury to compare Exhibit 3 to Exhibits 9 and 10.  Reporter's Record, Vol. 3, p. 143.  She argued, "Officer Wallace also told you there's no currently available technology that can reproduce what you see here in State's 9 and 10 without it being an actual child.  This is the state of technology.  They were able to do that on For[r]est Gump because those were two real people that they really filmed and put together."  *Id.*

In federal habeas corpus actions, federal courts do not sit to review the admissibility of evidence under state law or errors of state law.  *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)

("[w]e have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States."); *Hill v. Johnson*, 210 F.3d 481, 491 (5th Cir. 2000); *Little v. Johnson,* 162 F.3d 855, 862 (5th Cir. 1998); *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) ("errors of state law, including evidentiary errors, are not cognizable in habeas corpus").

Petitioner has not shown how his constitutional rights were violated by the admission of Sgt. Wallace's testimony regarding virtual and real imagery. Petitioner has not shown that the state court's rejection of this sub-claim (ground 4(3)) was unreasonable under clearly established federal constitutional law.

As to petitioner's complaints about closing argument, in federal habeas corpus the appropriate standard of review of a claim of improper argument by the prosecution is whether the "prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). It is "not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.*

For a state habeas petitioner to prevail on a claim that an improper jury argument marred his trial, the asserted error must be of constitutional magnitude. *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). This means that the prosecutorial remarks must be so prejudicial that they render the trial fundamentally unfair. *Bagley v. Collins*, 1 F.3d 378, 380 (5th Cir. 1993). The trial is rendered fundamentally unfair only if, in the context of the entire trial, the remarks were "crucial, critical, highly significant factors." *Ortega v. McCotter*, 808 F.2d 406, 410-11

(5th Cir. 1987) (citing *Whittington v. Estelle*, 704 F.2d 1418, 1422 (5th Cir. (1983)). Petitioner must show that the evidence against him was so insubstantial that, but for the remarks of the prosecution, no conviction would have occurred. *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). Improper argument by a prosecuting attorney should be found to exceed constitutional limits only in the most "egregious cases." *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987).

The Court of Criminal Appeals has held the following to be proper areas for closing argument to the jury: a summary of the evidence; reasonable deductions from the evidence; a response to opposing counsel's argument; and pleas for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990).

Petitioner contends the prosecutor argued that Sgt. Wallace testified there was no current technology that could produce synthetic images. That, however, is not what the prosecutor argued. The prosecutor argued there is no current technology that can create Exhibits 9 and 10 without using real children. That was a summary of Sgt. Wallace's testimony or a reasonable deduction from Sgt. Wallace's testimony. Petitioner has misstated the evidence and he has not shown that the state court's rejection of this sub-claim (ground 4(4)) was unreasonable under clearly established federal constitutional law.

The prosecutor's argument regarding the composite imagery in the movie *Forrest Gump* referred to the fact that images of real people were used. That was a summary of the evidence and a reasonable deduction from the evidence. Petitioner has not shown the prosecutor's argument was false and that the prosecutor knew it was false. He has not shown how his constitutional rights were violated. Petitioner has not shown that the state court's rejection of

this sub-claim (ground 4(2)) was unreasonable under clearly established federal constitutional law.

### C. Sufficiency of evidence

In ground 3, petitioner contends the evidence was legally and factually insufficient to establish that the images depicted real children under eighteen years old. Petitioner argues the poor-quality prints made petite and youthful adult females appear younger than they were, and photographic and virtual techniques made them appear even younger. Petitioner disagrees that jurors may observe images themselves to determine whether they are child pornography. He asserts that the Supreme Court has ruled artificial child pornography is virtually indistinguishable from real child pornography, citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249, 122 S. Ct. 1389, 152 L.Ed.2d 403 (2002), and that expert testimony is needed to prove the images were of real children. In a motion (document 20), petitioner contends TEX. PENAL CODE § 43.25(g), which permits several methods by which a jury may determine the age of the person in an image, is unconstitutional.

In *Ashcroft*, the Supreme Court did not state that artificial child pornography is virtually indistinguishable from real child pornography. The Supreme Court held that the portion of a federal statute that criminalized the possession of images that appear to depict minors, but which were not images of real children, violated the First Amendment. The Supreme Court noted that the government argued that the virtual images were indistinguishable from actual child pornography when it came to the reasons for banning them. *Id.* However, the Supreme Court rejected that argument. *Id.* at 249-51. The Supreme Court also observed that the government argued that eliminating virtual pornographic images of children would help eliminate the market

for pornography produced by using real children. *Id.* at 254. The government contended virtual images were indistinguishable from real images. *Id.* Supreme Court rejected that argument as well, stating, "The hypothesis is somewhat implausible. If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." *Id.* Thus, the Supreme Court did not hold that virtual child pornography and real child pornography were indistinguishable, nor did the Supreme Court hold that expert testimony was needed to prove images of child pornography were images of real children. Petitioner has not shown TEX. PENAL CODE § 43.25(g) is unconstitutional. Petitioner has not shown that the state court's rejection of this claim was an unreasonable application of clearly established federal constitutional law.

To the extent petitioner may be contending TEX. PENAL CODE § 43.26 is unconstitutional because it criminalizes virtual child pornography, that claim also lacks merit. The Texas statute refers to material that visually depicts a child under eighteen years of age, and it only prohibits possession of material that depicts an actual child. *Webb v. State*, 109 S.W.3d 580, 583 (Tex. App. — Fort Worth 2003, *no pet.*). The First Amendment does not protect child pornography. *Ashcroft v. Free Speech Coalition*, 535 U.S. at 249-50. Therefore, TEX. PENAL CODE § 43.26 does not violate First Amendment principles set out in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234. Petitioner has not shown that the state court's rejection of his claim concerning the constitutionality of § 43.26 was unreasonable.

Petitioner contends the evidence was both legally and factually insufficient. The Texas Court of Criminal Appeals has held that a claim of factual insufficiency under *Clewis v. State*,

922 S.W.2d 126 (Tex. Crim. App. 1996), is no longer recognized, and state courts would only consider the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). In determining whether the evidence is sufficient, the test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 319.

"A person commits an offense if: (1) the person knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct; and (2) the person knows that the material depicts the child as described by Subdivision (1)." TEX. PENAL CODE § 43.26(a). A rational trier of fact could have viewed Exhibits 9 and 10 and determined beyond a reasonable doubt that the images in those exhibits depicted children under the age of eighteen years old. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

### D. Ineffective assistance of trial counsel for failure to object that the extraneous evidence was prejudicial

In ground 2(2), petitioner contends trial counsel failed to object to the extraneous evidence as prejudicial. Contrary to petitioner's assertion, defense counsel objected to the extraneous evidence of pornography and erotica found at Virden Perma-Built and in the apartment at Jackson Square on the ground that the probative value was substantially outweighed by the danger of unfair prejudice. Reporter's Record Vol. 3, pp. 30-31, 46, 48,& 88-89. Petitioner has not shown deficient performance or prejudice. He has not shown that the state court's rejection of this sub-claim (ground 2(2)) was unreasonable.

### E. Prosecutorial misconduct -
### Inflamed jurors with irrelevant comments

In ground 4(5), petitioner contends a prosecutor inflamed jurors' passion with irrelevant comments regarding a young girl, about whom petitioner wrote sexually explicit stories; fantasies; and young girls with heads "cut off." The prosecutor argued:

> When you're determining whether or not the Defendant knowingly possessed an image of a child that he knew was under 18, what can you use? You can use some circumstantial evidence that you have available to you in this case. State's Exhibit No. 6, the extensive writings about sexually explicit and violent stories about little girls that he gives ages and names to. He got it right once. You know [a named girl] is real and you know she was three when she lived close to the Defendant. You know he got her age right. So he couldn't tell that these were under 18? This is clearly not a case where it's mistakenly been downloaded and it happens to be a mature 14, 15, 16, 17-year old girl who's trying to look really young, but just happens to be under 18. That is not what this is. That's not what this is. Also, if someone fantasizes and writes about having sexual contact with young girls who are three to eleven and he cuts out heads of young girls from ads and he puts it with adult pornography, that's a circumstance you can use to determine whether he knowing possessed these images and knew they were under 18. You have to put the whole picture together. And also, you have another piece of circumstantial evidence, the statement that he made to Officer Beckhum about his addiction to pornography. Always wanted something different and always wanted it younger and younger. That's circumstantial evidence that he knew that these two people were under 18.

Reporter's Record, Vol. 3, pp. 144-45. The prosecutor did not argue there were young girls with heads "cut off," as alleged by petitioner. The prosecutor argued that petitioner cut out the heads of girls in ads.

Contrary to petitioner's claim, the prosecutor's comments in closing argument were not irrelevant. She argued circumstantial evidence supported a determination that petitioner knew Exhibits 9 and 10 were images of children. Petitioner has not shown the prosecutor's arguments violated his right to due process, and he has not shown that the state court's rejection of this sub-claim (ground 4(5)) was unreasonable.

*F.  Prosecutorial misconduct -*
*Issued an emotional plea that jurors had a chance*
*to send a message by convicting petitioner*

In ground 4(6), petitioner contends a prosecutor made an emotional plea to the jurors that

they had a chance to send a message by convicting petitioner.  The prosecutor argued, "You can

review any of [the evidence] that you want to when you make your decision, but it is your chance

to send a message and in Randall County, this is not going to be tolerated. . . . [T]he message you

can send is that you are not going to tolerate it here in your community." *Id.* at 150-51.  The

prosecutor then asked the jury to find petitioner guilty. *Id.* at 151.  The prosecutor's argument

was a permissible plea for law enforcement. *United States v. Caballero*, 712 F.3d 126, 131-32

(5th Cir. 1983); *Whittington v. Estelle*, 704 F.2d 1418, 1423 (5th Cir. 1983).  Petitioner has not

shown that the state court's rejection of this sub-claim (ground 4(6)) was unreasonable.

V.
RECOMMENDATION

Petitioner has failed to present any cognizable or meritorious claim warranting federal

habeas corpus relief.  It is the RECOMMENDATION of the United States Magistrate Judge to

the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner MARK EDWARD BOLLES be DENIED.

VI.

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 26 day of February 2015.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin,* 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).